Camila Cossío (OR Bar No. 191504)
Center for Biological Diversity
P.O. Box 11374
Portland, OR 97211
Phone: 971-717-6427
ccossio@biologicaldiversity.org
*Pro Hac Vice Admission Pending*

*Attorney for Plaintiff*

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF ARIZONA
TUCSON DIVISION

| | |
|---|---|
| CENTER FOR BIOLOGICAL DIVERSITY,<br><br>　　　　Plaintiff,<br><br>　　v.<br><br>U.S. FISH AND WILDLIFE SERVICE; BRIAN NESVIK, in his official capacity as Director of the U.S. Fish and Wildlife Service; and DOUG BURGUM, in his official capacity as Secretary of the U.S. Department of the Interior,<br><br>　　　　Defendants. | Case No._____<br><br>**COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF** |

　　1.　　Plaintiff Center for Biological Diversity ("Center") brings this case challenging the U.S. Fish and Wildlife Service's ("Service") failure to issue an initial determination ("90-day finding") on the Center's petition to list the gray cat's eye (*Oreocarya leucophaea*), in violation of the Endangered Species Act's ("ESA" or "Act") mandatory deadline. The Service's failure to meet the deadline delays lifesaving protections for the gray cat's eye, increasing the plant's risk of extinction.

2. Plaintiff brings this lawsuit for declaratory and injunctive relief, seeking an Order declaring that the Service violated section 4(b)(3)(A) of the ESA, 16 U.S.C. § 1533(b)(3)(A), by failing to timely issue a 90-day finding for the gray cat's eye and directing the Service to issue the finding by a date certain.

## JURISDICTION

3. This Court has jurisdiction over this action pursuant to 16 U.S.C. § 1540(c), (g) (ESA citizen suit provision) and 28 U.S.C. § 1331 (federal question). This Court has authority to issue declaratory and injunctive relief pursuant to the ESA, 16 U.S.C. § 1540(g); 28 U.S.C. §§ 2201–2202; and 5 U.S.C. § 706(2).

4. Plaintiff provided Defendants with 60-days' notice of their ESA violations, as required by 16 U.S.C. § 1540(g)(2)(C), by a letter to the Service dated May 23, 2025. Defendants have not remedied the violations set out in the notice letter and an actual controversy exists between the parties within the meaning of the Declaratory Judgment Act, 28 U.S.C. § 2201.

5. Venue is proper in this Court pursuant to 28 U.S.C. § 1391(e) because Plaintiff resides in this judicial district.

## PARTIES

6. Plaintiff the CENTER FOR BIOLOGICAL DIVERSITY is a national, non-profit conservation organization that works through science, law, and policy to protect imperiled wildlife and their habitat. The Center is incorporated in California and headquartered in Tucson, Arizona, with offices throughout the United States. The Center has more than 93,927 active members throughout the country.

7. The Center brings this action on behalf of its members who derive recreational, educational, scientific, professional, and other benefits from the gray cat's eye and its habitat. Plaintiff's members' interests in protecting and recovering the plant and its habitat are directly harmed by the Service's failure to issue a timely 90-day finding, delaying critical protections under the ESA that can put the gray cat's eye on a path to recovery.

8. For example, Center member Mark Darrach is a botanist and geologist, specializing in rare plant monitoring and botanical conservation biology. Mr. Darrach studies and

surveys rare plants in Western North America, including the gray cat's eye. He has surveyed this plant since 1997 and, spurred by the dire decline in sand in the plant's ecosystem that he has observed, among other threats, Mr. Darrach co-authored the petition to list the plant as an endangered species. The Service's failure to protect the gray cat's eye harms Mr. Darrach's professional interest in conserving the plant and its habitat. The loss of this plant harms his consulting work because it means that more of the sand the plant relies on will disappear and harm other native species that he is monitoring. He returns to the plant's dunes habitat every year and intends to return in May 2026 to conduct monitoring for the plant. He intends to return to one of the plant's primary habitats every year as long as he is able. Mr. Darrach's recreational interests in looking for the plant and spending time in its habitat are also harmed by the Service's failure to protect the species. As an avid naturalist, Mr. Darrach derives moral and aesthetic satisfaction from the plant's existence, and the loss of this plant will harm his interests in recreating and spending time in the plant's habitat.

9. Defendants' violation of the ESA's deadline has delayed ESA protections for the gray cat's eye. This inaction harms Plaintiff's members' interests in the plant by permitting the species' continued trajectory toward extinction, thereby decreasing the likelihood that the Center's members will encounter the species as part of their personal and professional excursions. These injuries are actual, concrete injuries presently suffered by Plaintiff's members, are directly caused by Defendants' acts and omissions, and will continue unless the Court grants relief. The relief sought would redress these injuries by providing ESA protection for the gray cat's eye, thus promoting its conservation and recovery. Plaintiff and its members have no other adequate remedy at law.

10. Defendant U.S. FISH AND WILDLIFE SERVICE is the agency within the Department of the Interior charged with implementing the ESA for the gray cat's eye. The Secretary of the Interior has delegated administration of the ESA to the Service. 50 C.F.R. § 402.01(b).

11. Defendant BRIAN NESVIK is the Director of the Service and is charged with ensuring that agency decisions comply with the ESA. Defendant Nesvik is sued in his official capacity.

12. Defendant DOUG BURGUM is the Secretary of the U.S. Department of the Interior ("Secretary") and has the ultimate responsibility to administer and implement the provisions of the ESA. Defendant Burgum is sued in his official capacity.

## STATUTORY FRAMEWORK

13. The Endangered Species Act, 16 U.S.C. §§ 1531–1544, is "the most comprehensive legislation for the preservation of endangered species ever enacted by any nation." *Tenn. Valley Auth. v. Hill*, 437 U.S. 153, 180 (1978). Its fundamental purposes are "to provide a means whereby the ecosystems upon which endangered species and threatened species depend may be conserved [and] to provide a program for the conservation of such endangered species and threatened species." 16 U.S.C. § 1531(b).

14. The ESA defines a "species" as "any subspecies of fish or wildlife or plants, and any distinct population segment of any species of vertebrate fish or wildlife which interbreeds when mature." *Id.* § 1532(16).

15. A species is "endangered" when it "is in danger of extinction throughout all or a significant portion of its range." *Id.* § 1532(6). A species is "threatened" when it is "likely to become an endangered species within the foreseeable future throughout all or a significant portion of its range." *Id.* § 1532(20).

16. The ESA requires the Service to determine whether any species is endangered or threatened because of any one of, or combination of, the following factors: (A) the present or threatened destruction, modification, or curtailment of its habitat or range; (B) overutilization for commercial, recreational, scientific, or educational purposes; (C) disease or predation; (D) the inadequacy of existing regulatory mechanisms; or (E) other natural or manmade factors affecting its continued existence. *Id.* § 1533(a)(1).

17. If the Service determines that the species is not endangered throughout all its range, the ESA requires the agency to examine whether it is endangered or threatened throughout any "significant portion" of its range. *Id.* §§ 1532(6), (20).

18. The Service must base all listing determinations "solely on the basis of the best scientific and commercial data available." *Id.* § 1533(b)(1)(A).

19. To ensure the timely protection of species at risk of extinction, Congress set forth a detailed process whereby citizens may petition the Service to list a species as endangered or threatened. *Id.* § 1533(b)(3). In response, the Service must publish a series of three decisions according to statutory deadlines. First, within 90 days of receipt of a listing petition, the Service must, "to the maximum extent practicable," publish an initial finding as to whether the petition, "presents substantial scientific or commercial information indicating that the petitioned action may be warranted." *Id.* § 1533(b)(3)(A). This is known as the "90-day finding." If the Service determines in the 90-day finding that the petition does not present substantial information indicating that listing may be warranted, the petition is rejected and the process concludes.

20. If the Service determines that a petition presents substantial information indicating that listing "may be warranted," the agency must publish that finding and proceed with a scientific review of the species' status, known as a "status review." *Id.*

21. Upon completing the status review, and within 12 months of receiving the petition, the Service must publish a "12-month finding" with one of three listing determinations: (1) listing is "warranted"; (2) listing is "not warranted"; or (3) listing is "warranted but precluded" by other proposals for listing species, provided certain circumstances are met. *Id.* § 1533(b)(3)(B).

22. If the Service determines that listing is "warranted," the agency must publish that finding in the Federal Register along with the text of a proposed regulation to list the species as endangered or threatened and to designate critical habitat for the species. *Id.* § 1533(a)(3)(A), (b)(3)(B)(ii). Within one year of publication of the proposed listing rule, the Service must publish in the Federal Register the final rule implementing its determination to list the species and designate critical habitat. *Id.* § 1533(b)(6)(A).

23. If the Service instead issues a finding that listing the species is "not warranted," the process concludes, and that finding is a final agency action subject to judicial review. *Id.* § 1533(b)(3)(C)(ii).

24. The ESA has a suite of substantive and procedural legal protections that apply to species once they are listed as endangered or threatened. For example, section 4(a)(3) of the Act requires the Service to designate "critical habitat" for each endangered and threatened species. *Id.* § 1533(a)(3).

25. In addition, ESA section 7(a)(2) requires all federal agencies to ensure that their actions do not "jeopardize the continued existence" of any endangered or threatened species or "result in the destruction or adverse modification" of any listed species' critical habitat. *Id.* § 1536(a)(2).

26. ESA section 9 prohibits, among other actions, "any person" from causing the "take" of any protected fish or wildlife without lawful authorization from the Service. *Id.* §§ 1538(a)(1)(B), 1539; *see also id.* § 1532(19) (defining "take"). Other provisions require the Service to "develop and implement" recovery plans for listed species, *id.* § 1533(f); authorize the Service to acquire land for the protection of listed species, *id.* § 1534; and authorize the Service to make federal funds available to states to assist in the conservation of endangered and threatened species, *id.* § 1535(d).

## FACTUAL BACKGROUND

27. The gray cat's eye (*Oreocarya leucophaea*) is a rare flower found exclusively on dunes along the Columbia River in central Washington. The species blooms from late April to early June and then goes into dormancy until the remainder of the year. In the past 25 years, the plant has experienced a dramatic decline; initially, there were 45 known occurrences of the plant, but this number has dwindled to only two occurrences, as well as a third that is considered temporarily viable.

28. One of the main threats to the plant is loss of sand supply, which harms the dunes habitat it requires. Sand dune habitats require a consistently replenished supply of sand-size particles and a specific wind regime. The conversion of much of the lower Columbia Basin to

6

industrial scale agriculture has effectively eliminated a major source of sand for the establishment of dune fields for the plant to survive in.

29. Other threats include frequent wildfires and encroachment of exotic grasses that thrive post-fire; extreme declines in pollinating insects due, in part, to pesticide use; other types of habitat conversion, including historic effects of dams near the plant; and impacts from climate change that are disrupting groundwater regimes. The results from a 2023 field study indicate that the gray cat's eye plant is rapidly approaching extinction.

30. Invasive plants in particular have led to entire populations permanently disappearing. Most notably cheatgrass (*Bromus tectorum*), but also diffuse knapweed (*Centaurea diffusa*), Russian thistle (*Salsola tragus*), tumble mustard (*Sisymbrium altissimum*), and rush skeletonweed (*Chondrilla juncea*) have overrun ecologically intact locations where the plant occurred.

**Listing Petition and Response**

31. The Center petitioned the Service to list the gray cat's eye on April 17, 2024. The Center's petition documented threats to the plant from loss of sand, invasive species, wildfires, loss of pollinators, the effects of climate change, industrial-scale agriculture, and a lack of adequate regulatory mechanisms. The Center's petition also noted that the plant requires emergency listing because it is on the brink of extinction.

32. It has been over a year since the Service received the Center's petition to list the gray cat's eye as threatened or endangered under the ESA and to designate critical habitat concurrently with listing.

33. The Service has yet to issue a 90-day finding on the Center's petition to list the plant even though the deadline for publication was April 17, 2025. *Biodiversity Legal Found. v. Badgley*, 309 F.3d 1166, 1176 (9th Cir. 2002) (holding that both 90-day finding and 12-month finding must be made within one year of receipt of a listing petition).

34. The Service's failure to publish a timely 90-day finding on the Center's petition has also led to a delay in the Service's statutorily required 12-month finding. 16 U.S.C §

1533(b)(3)(B) (the Service must make a 12-month finding no later than one-year from receipt of the petition).

35. Thus, the Service's 90-day finding on the Center's petition to list the gray cat's eye is past due.

## CLAIM FOR RELIEF

**Violations of the ESA for Failure to Publish a Timely 90-Day Finding for the gray cat's eye**

36. Plaintiff re-alleges and incorporates all allegations set forth in the preceding paragraphs.

37. The ESA provides the Service with some leeway in publishing its initial finding within 90-days of receipt of the petition "to the maximum extent practicable," but in no case longer than one year. 16 U.S.C § 1533(b)(3)(A); *Biodiversity Legal Found.,* 309 F.3d at 1176.

38. The Service has yet to issue the required 90-day finding for the gray cat's eye.

39. Defendants failed to perform their nondiscretionary duty to timely publish a timely 90-day finding in violation of the ESA. 16 U.S.C. § 1533(b)(3)(A).

## REQUEST FOR RELIEF

WHEREFORE, Plaintiff respectfully requests that the Court enter judgment providing the following relief:

1. Declare that Defendants violated the ESA by failing to issue a timely 90-day finding in response to the Center's petition to list the gray cat's eye under the ESA;
2. Provide injunctive relief compelling Defendants to issue the 90-day finding by a date certain;
3. Retain continuing jurisdiction to review Defendants' compliance with all judgments and orders herein;
4. Grant Plaintiff its reasonable attorneys' fees and costs as provided by the ESA, 16 U.S.C. § 1540(g)(4); and
5. Provide such other relief as the Court deems just and proper.

Respectfully submitted and dated this 6th day of November 2025.

*s/ Camila Cossío*
Camila Cossío (OR Bar No. 191504)
Center for Biological Diversity
P.O. Box 11374
Portland, OR 97211-0374
(971) 717-6402
ccossio@biologicaldiversity.org
*Pro Hac Vice Admission Pending*

Brian Segee (CA Bar No. 200795)
Center for Biological Diversity
226 W. Ojai Ave., Ste. 101-442
Ojai, CA 93023-3278
Phone: 805-750-8852
bsegee@biologicaldiversity.org
*Pro Hac Vice Admission Pending*

*Attorneys for Plaintiff*
